# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 16-1154V
### (not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
LLOYD MAKSTELL and NADINE          *
MAKSTELL WHITSETT, as Legal        *
Representative of the Estate of EDWARD  *      Special Master Corcoran
B. MAKSTELL, Deceased,             *
                                   *
            Petitioners,           *      Filed: September 11, 2018
                                   *
      v.                           *
                                   *      Attorney's Fees and Costs.
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
            Respondent.            *
                                   *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Otwell Sayers Rankin*, B. Dahlenburg Bonar P.S.C., Covington, KY, for Petitioner.

*Ryan Daniel Pyles*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART ATTORNEY'S FEES AND COSTS[1]

On September 16, 2016, Lloyd Makstell and Nadine Makstell Whitsett filed a petition on behalf of Edward Makstell, deceased, seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Pet. at 1, ECF No. 1. Petitioners alleged that Mr. Makstell suffered from encephalopathy and related sequelae as a result of his September 18, 2013

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa–10–34 (2012) ("Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

influenza vaccine, which ultimately led to his death. *Id.* The parties filed a stipulation for damages on February 26, 2018, ECF No. 25, which I adopted as my Decision awarding damages. *See generally* Decision, ECF No. 26.

Petitioners have now filed a motion requesting final attorney's fees and costs, dated July 31, 2018 (ECF No. 31 ("Fees App.")), requesting reimbursement in the total amount of $44,529.48 (representing $43,054.68 in attorney's fees, plus $1,474.80 in costs). Fees App. at 2. Respondent reacted to the motion on July 31, 2018, indicating that he believes Petitioners have satisfied the statutory requirements for an award of attorney's fees and costs and deferring to my discretion to determine the amount to be awarded. Resp. Fees. App. at 2–3, ECF No. 32. Petitioners filed no reply.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioners' motion, awarding final attorney's fees and costs in the amount of **$30,788.13**

## BACKGROUND

Petitioners' attorneys, Ms. Barbara Bonar and Mr. Otwell Rankin, began working on this matter on January 22, 2015, nearly twenty-one months before litigation formally commenced. Fees App. Ex. 1 at 1, ECF No. 31-1. Both attorneys spent many hours reviewing medical records, communicating with Petitioners, and preparing materials for the initial filing. *See generally id.* at 1–4. Petitioners filed their initial claim on September 16, 2016, accompanied by extensive medical records and other documentation. *See generally* Pet., ECF No. 1. The Joint Statement of Completion was submitted on December 12, 2016. ECF No. 10. The parties thereafter engaged in settlement negotiations throughout early 2017, and Respondent filed its Rule 4(c) Report on July 28, 2017. ECF No. 18.  By early 2018, the parties had reached a settlement agreement. *See generally* Stipulation, ECF No. 25.

## ANALYSIS

Vaccine Program attorneys are entitled to a fees award in successful cases such as this one. § 15(e)(1); *Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). Determining the appropriate award amount requires the special master to calculate a base figure using the lodestar method, i.e., "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). In arriving at this number, the special master may adjust the number of hours reasonably expended on the basis of certain specific findings. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *5 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (citing *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991)). This

standard for calculating a fee award is applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

### a. Reasonable Hourly Rate

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the appropriate forum. *Avera*, 515 F.3d at 1348. That rate is in turn determined by the "forum rule," which bases the award on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C., for Vaccine Program cases). *Id.* However, when the majority of counsel's work is done outside the forum jurisdiction *and* when counsel's local rate would be "substantially lower" than District of Columbia rates, a local rate may be used instead. *Id.* at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Petitioners have requested compensation for their counsel at the following rates, which they assert are appropriate in light of Ms. Bonar and Mr. Rankin's respective years of experience:

| Attorney | 2015 | 2016 | 2017 | 2018 |
|----------|------|------|------|------|
| Ms. Bonar | $450.22 | $468.23 | $487.13 | $506.62 |
| Mr. Rankin | $338.14 | $351.67 | $365.74 | $380.37 |

Fees App. at 4. The majority of Ms. Bonar and Mr. Rankin's work in this case was done outside the District of Columbia. *See id.* at 3. Their offices are located in the Cincinnati, Ohio metropolitan area. *Id.* Accordingly, it is appropriate to compare Cincinnati rates and District of Columbia rates to ascertain whether the two differ significantly. *See Avera*, 515 F.3d at 1349.

Special Masters Gowen and Roth addressed reasonable hourly rates for Ms. Bonar and Mr. Rankin in *Jones v. Sec'y of Health & Human Servs.*, No. 09-293V, 2016 WL 7233938 (Fed. Cl. Spec. Mstr. Nov. 18, 2016) and *Windhorst v. Sec'y of Health & Human Servs.*, 2017 WL 4768125 (Fed. Cl. Spec. Mstr. Sept. 27, 2017), respectively. In those cases, as here, the majority of Ms. Bonar and Mr. Rankin's work was performed in the Cincinnati metropolitan area. *Jones*, 2016 WL 7233938, at *2; *Windhorst*, 2017 WL 4768125, at *2. To determine whether Cincinnati rates differed significantly from District of Columbia rates, Special Masters Gowen and Roth looked to the "Rubin Committee" rates, an index of attorney's fee rates often used in Cincinnati-area attorney's fee calculations. *Jones*, 2016 WL 7233938, at *3; *Windhorst*, 2017 WL 4768125, at *2.

The Rubin Committee rates were set in 1983 when, "in response to the growing number of statutes that required the trial court to determine a reasonable fee to award the prevailing party, former Chief Judge Carl Rubin of the Southern District of Ohio formed a committee to determine

a reasonable fee for attorneys in the Cincinnati area." *Kindel v. Cont'l Cas. Co.*, No. 1:02CV879, 2005 WL 1241975, at *4 (S.D. Ohio May 25, 2005). The rates are increased by 4 percent annually for cost of living, *Jones*, 2016 WL 7233938, at *3, and decisions from the Southern District of Ohio continue to reference the adjusted rates when determining appropriate attorney's fee awards. *See, e.g.*, *Concepta Bus. Sols., LLC v. Cogent Analytics, LLC*, No. 1:16-cv-438, 2017 WL 1881341, *10 (S.D. Ohio May 9, 2017); *Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, *5 (S.D. Ohio Dec. 2, 2016). Adjusted for cost of living, the Rubin Committee rates for 2015–18 are:

| Experience | 1983 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| 0–2 years | $61.77 | $216.69 | $225.36 | $234.37 | $253.10 |
| 2–4 years | $71.62 | $251.25 | $261.30 | $271.37 | $282.62 |
| 4–5 years | $82.81 | $290.50 | $302.12 | $314.20 | $326.77 |
| 6–10 years | $96.39 | $338.14 | $351.67 | $365.74 | $380.37 |
| 11–20 years | $113.43 | $397.92 | $413.84 | $430.39 | $447.61 |
| 20+ years | $128.34 | $450.22 | $468.23 | $487.13 | $506.62 |

*Gutter Topper, Ltd. v. Sigman & Sigman Gutters, Inc.*, No. 1:05-CV-149, 2015 WL 5016503, at *4 (S.D. Ohio Aug. 25, 2015).

Ms. Bonar was first admitted to the bar in 1984, giving her thirty-four years of experience. Fees App. at 4. She thus falls in the "20+ years of experience" category. Mr. Rankin began practicing law in 2009, meaning he has nine years of experience, and therefore falls in the "6–10 years of experience" category. *Id.* However, as indicated by Special Master Gowen, Rubin Committee rates should be reduced by 18.3 percent in Program cases in order to eliminate the risk premium.[3] *Jones*, 2016 WL 7233938, at *3 (citing *McCulloch*, 2015 WL 5634323, at *17–19). Accordingly, taking into account their respective years of experience and the 18.3 percent reduction, the local rates for Ms. Bonar and Mr. Rankin should be considered as follows:

| Attorney | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| Ms. Bonar | $367.83 | $382.54 | $397.99 | $413.91 |
| Mr. Rankin | $276.26 | $287.31 | $298.81 | $310.76 |

---

[3] As explained by Special Master Gowen in *McCulloch*, many fee-shifting statutes outside the Program require a party to prevail in order for it to receive attorney's fees. *McCulloch*, 2015 WL 5634323, at *19. Such a requirement necessitates that a "risk premium" be factored into fee awards. *See id.* However, petitioners in the Program may be reimbursed for reasonable attorney's fees and costs even if they do not prevail on their claims. *See id.* Thus, fee indexes used to calculate reasonable fees in other areas of litigation should be reduced by 18.3% to account for the absence of this risk premium. *Jones*, 2016 WL 7233938, at *3.

As indicated by Special Masters Gowen and Roth, these rates are not substantially different from the District of Columbia rates enumerated in *McCulloch* and subsequently embraced by the Office of Special Masters.[4] *Jones*, 2016 WL 7233938, at *4; *Windhorst*, 2017 WL 4768125, at *2. Petitioners' counsel should therefore receive forum rates.[5]

Applying forum ranges and adhering to the rates set out for Ms. Bonar and Mr. Rankin in *Jones* and *Windhorst*, I will employ the following rates:

| Attorney | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| Ms. Bonar | $385.00 | $385.00 | $395.00 | $410.00 |
| Mr. Rankin | $250.00 | $250.00 | $281.00 | $290.00 |

### b. *Hours Reasonably Expended*

After determining appropriate hourly rates, special masters must consider the reasonableness of the total hours expended. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205–06 (2009). This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437. Pursuant to their skill and experience, special masters may modify the hours expended in the lodestar calculation as they see fit. *McCulloch*, 2015 WL 5634323, at *5 (citing *Wasson*, 24 Cl. Ct. at 484). They need not engage in a line-by-line analysis of billing records when determining whether an overall hour reduction is proper. *Id.* Indeed, when appropriate, special masters may reduce attorneys' hours by a percentage rather than proceeding line by line. *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702 (2016). The Court of Federal Claims has indicated that "percentage reductions 'are subject to

---

[4] The forum rate tables are available online at http://www.uscfc.uscourts.gov/node/2914.

[5] In previous determinations regarding whether attorneys are entitled to forum rates, I have looked to other federal cases in the relevant district. *E.g.*, *Dezern v. Sec'y of Health & Human Servs.*, No 13-643V, 2016 WL 6678496, *5 (Fed. Cl. Spec. Mstr. Oct. 14, 2016). In particular, I have considered rates awarded to counsel in Fair Debt Collection Practices Act ("FDCPA"), Fair Credit Reporting Act ("FCRA"), and Fair Labor Standards Act ("FLSA") cases, as these practice areas, like Vaccine Program cases, are considered relatively straightforward, and therefore involve comparable work performed under a federal fee-shifting statute. *Id.* A sampling of recent fee awards from FDCPA and FLSA cases from the Southern District of Ohio (where Cincinnati is located) further supports my finding that Cincinnati rates do not differ significantly from forum rates. *See, e.g.*, *Thompson v. Rosenthal*, No. 2:14-cv-37, 2014 WL 7185313, *5 (S.D. Ohio Dec. 16, 2014) (FDCPA; approving a $400 hourly rate for an attorney with over thirty years of experience); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *6 (S.D. Ohio Aug. 17, 2018) (FLSA; approving a $350 hourly rate for an attorney with over thirty years of experience and a $225 hourly rate for an attorney with roughly five years of experience). Accordingly, although I am relying here on prior fees determinations involving the Rubin Committee rates, my determination that these particular lawyers are entitled to forum rates would be the same even if I simply adhered to my usual analytic approach in such circumstances.

heightened scrutiny'" and that special masters employing them "must provide a 'concise but clear' explanation as to why the fee reduction is justified." *Id.* (citations omitted).

Upon review of Petitioners' counsel's billing statements, I will reduce their total enumerated hours on the basis of certain billing log entries containing activities that should have been billed at lower rates or should not have been billed at all. As discussed in greater detail below, I have chosen to employ a percentage reduction because bulk billing log entries make it impossible to determine precisely how much time should have been billed at a lower rate or not billed at all.

First, I note that time spent traveling is generally compensated at one-half of the attorney's hourly rate. *Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (citations omitted). Petitioners' counsel's billing records, however, reflect that Mr. Rankin billed full hourly rates for round-trip travel to Cincinnati, Ohio, on two occasions. Fees App. Ex. 1 at 3, 7. These entries both lump the travel time in with other activity, *id.*, so it cannot be said exactly how many hours should be billed at a reduced rate. *See, e.g., id.* at 3 ("Traveled to 1050 Mehring Way; met with Nadine Whitsett (Injured's daughter); returned from 1050 Mehring Way, Cincinnati, OH—2.50 hours"). While special masters routinely halve the rate for improperly-billed travel time, *see, e.g., McCulloch*, 2015 WL 5634323, at *26, I am unable to do so here, because Mr. Rankin did not indicate how much time out of each of these entries was spent in transit.

Second, work that could be done by a paralegal, such as organizing exhibits, should be billed at an appropriate paralegal rate.[6] *Mostovoy v. Sec'y of Health & Human Servs.*, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016). The billing records include bulk entries reflecting at least some paralegal-level work, such as the 5.50 hours Mr. Rankin spent to "Conduct organization/ edit of Petition package and all attachments, including affidavits, medical records in preparation for filing. File Petition and attachments." Fees App. Ex. 1 at 4. Mr. Rankin billed another 1.75 hours at a paralegal rate of $135 per hour that same day to "Prepare copy of Petition package including all attachments, for distribution; mail." *Id.* It is unclear why, over the course of three years of work in this matter, only that one time log entry was billed at a paralegal rate. Rather than attempting to parse out which components of certain bulk entries were paralegal-level organizational work and which were attorney-level tasks, I will simply take these bulk entries into consideration when modifying the overall hours expended.

Finally, work that is clerical or secretarial in nature, such as arranging meetings, should not be billed at all. *Mostovoy*, 2016 WL 720969, at *5. Yet several of the entries in counsel's billing log are of such an administrative nature. *See, e.g.*, Fees App. Ex. 1 at 6 ("Receipt and review Non-

---

[6] Forum paralegal rates for 2018 are $132–$153. *See* OSM Attorneys' Forum Hourly Rate Fee Schedules, http://www.uscfc.uscourts.gov/node/2914.

PDF Scheduling Order re: Status Conference held on May 2, 2017, calendar dates—0.20 hours"), 7 ("Emailed Nadine to schedule time to meet at her office—0.10 hours"). Because several of these entries also include a combination of attorney work and clerical work, I will not strike specific time entries altogether, but rather factor them in when determining an overall hour reduction.

Upon consideration of the travel and the paralegal-level and clerical work scattered throughout Petitioners' counsel's billing logs, I will reduce the overall hours total by 10%. As a result, the final attorney's fees award shall be **$30,246.03**,[7] a reduction of **$12,808.65**.

   c.   *Reasonable Costs*

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include, for example, expenses incurred to obtain medical records and expert reports, as well as filing fees, postage, and photocopying. *See, e.g.*, *Sabella*, 86 Fed. Cl. at 224. Petitioners may fail to carry their burden of demonstrating that requested costs are reasonable if they do not provide appropriate documentation to substantiate a requested cost. *See Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). In such instances, special masters have refrained from awarding compensation. *See, e.g.*, *id.*

Petitioners request $1,474.80 in costs associated with this matter. Fees App. at 7. The requested costs are for obtaining medical records, photocopies, and the filing fee in this matter. Fees App. Ex. 1 at 10–11. However, although counsel has recorded these costs as part of a larger invoice, documentation was provided for only four of the twenty-one requested line item expenses. *See* Substantiating Documents for Costs, filed Sept. 11, 2018, ECF No. 33. Specifically, Petitioner's counsel provided substantiation for the cost of obtaining copies of medical records on

---

[7] Based on the following calculations:
- Ms. Bonar:
    - 2015: $385 x (90% of 6 hours) = $2,079.00
    - 2016: $385 x (90% of 4.7 hours )= $1,628.55
    - 2017: $395 x (90% of 1.65 hours) = $568.58
    - 2018: $410 x ((90% of 5.75 hours) = $2,121.75
  *Subtotal for Ms. Bonar:* $6,415.88
- Mr. Rankin:
    - 2015: $250 x (90% of 26.25 hours) = $5,906.25
    - 2016: $250 x (90% of 35.25 hours) = $7,931.25; $135 x (90% of 1.75 hours) = $212.63
    - 2017: $281 x (90% of 26.7 hours) = $6,752.43
    - 2018: $290 x (90% of 11.6 hours) = $3,027.60
  *Subtotal for Mr. Rankin:* $23,830.16
  <u>Total:</u> $30,246.03

August 9, 2016 ($17.80, Ex. 8) and September 1, 2016 ($106.85, Ex. 9); the filing fee ($400.00, Ex. 10); and the postage receipt for mailing a copy of the petition to Respondent ($17.45, Ex. 11). While I find the substantiated costs to be reasonable, I cannot determine the reasonableness of all other requested costs without proper documentation. Accordingly, Petitioners shall receive **$542.10** for costs, a reduction of **$932.70**.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. § 15(e). Accordingly, I award a total of **$30,788.13** (representing $30,246.03 in attorney's fees and $542.10 in costs) as a lump sum in the form of a check jointly payable to Petitioners and their counsel, Mr. Otwell Rankin, Esq. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this decision.[8]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.